## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| ADECHI HOUSTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 18 C 2635 |
| v. | ) |
| | ) Judge John Z. Lee |
| AIMCO, NORTHPOINT PRESERVATION, LP, | ) |
| LEEANN MOREIN, ALICE PHETTEPLACE, | ) |
| JASMINE PENA, SANFORD KAHN, LLP, | ) |
| ROBERT KAHN, and ELIZABETH NERNEY, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Adechi Houston, proceeding *pro se*, has filed this lawsuit against Defendants, AIMCO Properties LP ("AIMCO"), Northpoint Preservation LP ("Northpoint"), Leeann Morein, Alice Phetteplace, Jasmine Pena, Sanford Kahn LLP, Robert Kahn, and Elizabeth Nerney. Houston alleges several claims stemming from her eviction from an apartment rented through a government housing program. Currently before the Court are three motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6): one filed by Defendants AIMCO, Northpoint, Morein, Phetteplace, and Pena (collectively, "the Northpoint Defendants"); one filed by Defendants Kahn and Sanford Kahn, LLP (collectively, "Kahn"); and one filed by Nerney. In addition, Houston has filed a motion for sanctions. For the reasons stated herein, the Northpoint Defendants' motion to dismiss [40] is granted in part and denied in part; Kahn's motion to dismiss [90] is granted; Nerney's motion to dismiss [47] is granted; and Houston's motion for sanctions [50] is denied.

## Background[1]

This case arises out of Houston's eviction from her apartment in 2017. Houston, who is African-American, had rented the apartment with the assistance of the U.S. Department of Housing and Urban Development ("HUD") Section 8 Project-Based program. Am. Compl. ¶ 9, ECF No. 39. The apartment was owned by AIMCO and managed by Northpoint. *See generally id.* ¶¶ 9–37.

Houston, dissatisfied with property manager Jasmine Pena, sent an email to AIMCO, HUD, the Illinois Housing Development Authority ("IHDA"), and numerous elected officials on November 28, 2016, describing Pena's "illegal management practices." *Id.* ¶¶ 5, 11. Houston and Pena were later involved in a verbal confrontation on February 10, 2017. *Id.* ¶ 12. Houston states that this confrontation arose out of Pena's "habit of instigating conflict between black residents in hopes they violate their lease and she could pursue eviction against them," and that AIMCO's Director of Operations, Alice Phetteplace, condoned Pena's behavior. *Id.* ¶¶ 5, 13. Subsequently, Houston received a "Notice of Termination of Tenancy" on February 13, 2017, which ordered her to vacate by February 27, 2017. *Id.* ¶ 14.

Houston apparently remained in the unit past that date, as she explains that she attempted to pay rent on April 1, 2017, but that Pena refused to accept it. *Id.* ¶ 20. Northpoint (represented by Kahn) filed a "Forcible Entry and Detainer" action against Houston in the Circuit Court of Cook County on April 7, 2017. *Id.* ¶ 21. The

---

[1]  The following facts are taken from the complaint and are accepted as true at the motion-to-dismiss stage. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (stating that, at the motion-to-dismiss stage, the court "accept[s] as true all well-pleaded facts alleged").

complaint alleged that Houston had failed to pay rent and had held over after the end of her tenancy period. *Id.*

Over the next few months, several tenant organizations engaged in efforts to have Pena removed as the property manager. *Id.* ¶¶ 21(e)–28. Houston also filed a housing discrimination complaint with the Illinois Department of Human Rights in August 2017. *Id.* ¶ 29.

The eviction case concluded on October 23, 2017, when Houston signed an "unconscionable agreement under duress with [Northpoint] . . . obtained by fraud." *Id.* ¶ 30. On the same day, AIMCO announced that Pena was no longer employed as property manager. *Id.* ¶ 31. Houston was evicted from her apartment on February 28, 2018. *Id.* ¶ 32. She subsequently appealed the eviction. *Id.* ¶¶ 34–37.

Houston brings claims pursuant to 42 U.S.C. § 1983 for First Amendment retaliation (Count I) and violation of her Fourteenth Amendment due-process rights (Count II), as well as claims pursuant to §§ 1985(3) and 1986 (Counts III and IV, respectively). The complaint does not explicitly state which claims are brought against which Defendants, but Counts I and II allege conduct by the Northpoint Defendants, Count III alleges conduct by the Northpoint Defendants and Kahn, and Count IV alleges conduct by IHDA employee Elizabeth Nerney.

## Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure ("Rule") 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In addition, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

### I.    Applicability of *Rooker-Feldman*

The Northpoint Defendants initially sought dismissal of Counts I through III pursuant to the *Rooker-Feldman* doctrine[2] and Rule 12(b)(6). However, at the time the parties were briefing their motion, Houston was pursuing an appeal of the circuit court's order of eviction in the Illinois Appellate Court, as indicated in her complaint. *See* Am. Compl. ¶ 34 ("On April 20, 2018 – Plaintiff filed a timely Appellant['s] Opening Brief with the First District Appellate Court."). *Rooker-Feldman* does not apply if a state-court appeal is pending. *See Parker v. Lyons*, 757 F.3d 701, 705–06 (7th Cir. 2014) (concluding that "*Rooker-Feldman* does not bar the claims of federal-court plaintiffs who . . . file a federal suit when a state-court appeal is pending"

---

[2]    *See D.C. Ct. App. v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Tr. Co.*, 263 U.S. 413 (1923).

because "[p]roceedings end for *Rooker-Feldman* purposes when the state courts *finally resolve* the issue that the federal court plaintiff seeks to relitigate in a federal forum") (quoting *Mothershed v. Justices of the Supreme Ct.*, 410 F.3d 602, 604 n.1 (9th Cir. 2005)).

After realizing this, the Northpoint Defendants abandoned *Rooker-Feldman* in favor of *Colorado River* abstention in their reply brief. *See Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976). But because this argument was not raised in their opening brief, it is waived. *See Mendez v. Perla Dental*, 646 F.3d 420, 423–24 (7th Cir. 2011) ("[I]t is well-established that arguments raised for the first time in the reply brief are waived."); *see also Thomas-Wise v. Nat'l City Mortg. Co.*, No. 14 C 3460, 2015 WL 641770, at *2 (N.D. Ill. Feb. 13, 2015) (noting that *Colorado River* is not a jurisdictional doctrine, and as such, may be waived).

Subsequently, while the parties were briefing Kahn's motion to dismiss, which also sought dismissal pursuant to the *Rooker-Feldman* doctrine, the Illinois Appellate Court issued its decision in Houston's appeal, affirming the judgment of the circuit court. *Northpoint Preservation, LP v. Houston*, No. 1-17-3149, 2019 WL 544476 (Ill. App. Ct. Feb. 8, 2019).[3] As the state-court appeal has now been decided, the Court will address the applicability of *Rooker-Feldman*.

The *Rooker-Feldman* doctrine provides that only the Supreme Court can review state-court judgments. *Milsap v. Habitat Co., LLC*, 708 F. App'x 884, 886 (7th Cir. 2018). Thus, the Northpoint Defendants and Kahn argue, Houston's claims are

---

[3]    The Court can take judicial notice of the state-court order, which is a matter of public record. *See In the Matter of Lisse*, 905 F.3d 495, 496 (7th Cir. 2018).

barred because they ultimately arise out of the state-court eviction proceeding. Although the Court agrees that Houston's claims in this lawsuit are related to those in her state-court case, the Court concludes that *Rooker-Feldman* is inapplicable here.

In *Milsap v. Chicago Housing Authority*, another court in this district addressed virtually the same issue. No. 15 C 630, 2016 WL 6962839, at \*2 (N.D. Ill. Nov. 29, 2016). There, the plaintiff brought a First Amendment retaliation claim, alleging that she was wrongfully evicted for engaging in tenant organizing. *Id.* at \*1. The court concluded that *Rooker-Feldman* did not apply because (1) the plaintiff's injuries were caused by "the retaliatory conduct of [the defendants] and not by any error in the state court proceedings or judgment," (2) the plaintiff did not "request a review by this Court of the state court eviction order or reinstatement in the housing complex" from which she was evicted, and (3) the Court did not need to "review the eviction determination to discuss the merits of [the plaintiff's] constitutional claim." *Id.* at \*2. The same is true here. Although Houston clearly believes that the state-court eviction order should not have been entered, her First-Amendment retaliation claim—which, for the reasons discussed below, is her sole viable claim—does not seek review of the state-court judgment. As such, the *Rooker-Feldman* doctrine does not bar Houston's claims.

## II. First Amendment Retaliation (Count I)

The Northpoint Defendants seek dismissal of Count I, in which Houston contends that Morein, Phetteplace, and Pena violated her First Amendment rights by retaliating against her for an email she sent to AIMCO, HUD, IHDA, and

numerous elected officials, complaining about Pena's management practices. Houston describes, in significant detail, the contents of the email, which range from accusing Pena of submitting fraudulent payments to implying that Pena was engaged in acts of terrorism. *See* Am. Compl. ¶ 39. According to Houston, the email was a motivating factor in the decision to terminate her tenancy.

The Northpoint Defendants contend that Count I must be dismissed because Houston has not established a connection between the email and her subsequent eviction. Houston disagrees, arguing that the Northpoint Defendants cite the wrong legal standard and attaching numerous exhibits that purport to show Pena's improper motive for terminating her lease.

Although this is a close question, the Court concludes that Houston's complaint states a colorable First Amendment retaliation claim. To state such a claim, a plaintiff must allege that "(1) [s]he engaged in activity protected by the First Amendment; (2) [s]he suffered a deprivation that would likely deter First Amendment activity in the future; and (3) the First Amendment activity was at least a motivating factor in the Defendants' decision to take the retaliatory action." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (internal quotation marks omitted).[4] The Northpoint Defendants argue only that Houston "fails to provide any 'factual content that [would] allow the court to draw a reasonable inference that the defendant is

---

[4]     Houston contends that the Northpoint Defendants "need to show the Court that the Plaintiff would have received the same punishment if they had not been improperly motivated." Pl.'s Resp. Opp. Mot. Dismiss at 7, ECF No. 59. But this language comes from a Second Circuit case addressing retaliation at the summary judgment stage that is inapplicable in this context, *see Graham v. Henderson*, 89 F.3d 75, 80 (2d Cir. 1996).

liable for the alleged misconduct.'" Northpoint Defs.' Mem. Supp. Mot. Dismiss at 12, ECF No. 42 (quoting *Iqbal*, 556 U.S. at 678).

Accepting Houston's allegations as true and drawing all reasonable inferences in her favor, however, the Court finds that Houston has set forth sufficient allegations to support an inference that the Northpoint Defendants were motivated by her email when they evicted her from her apartment. Houston alleges that she sent an email critical of Pena's management practices, that Morein and Phetteplace corresponded with each other about it, that an attorney representing AIMCO contacted Houston to discuss the substance of the email, and that—approximately three months later— Houston was served with a notice of termination of tenancy. Taken together, these are sufficient facts from which to draw an inference that the email was a motivating factor in Houston's eviction. The Northpoint Defendants' motion to dismiss is therefore denied as to Count I.

### III. Fourteenth Amendment Due Process (Count II)

The Northpoint Defendants also seek dismissal of Count II, in which Houston alleges that the Northpoint Defendants violated her Fourteenth Amendment right to procedural due process by terminating her lease without an internal pre-termination hearing. The Northpoint Defendants move to dismiss this claim on the ground that, in Illinois, eviction proceedings satisfy a tenant's procedural due-process rights. Houston responds that she never received a trial in the state circuit court.[5]

---

[5] Houston did not receive a trial because she chose instead to sign an agreed order to vacate. And although she challenged that order in her state-court appeal, it is not the subject of her due-process claim in this case, which is instead focused on the lack of an internal hearing prior to her eviction.

A procedural due-process analysis consists of two steps: "The first step requires [the Court] to determine whether the plaintiff has been deprived of a protected interest; the second requires a determination of what process is due." *Doherty v. City of Chi.*, 75 F.3d 318, 322 (7th Cir. 1997). Here, the protected interest is Houston's property interest in her apartment. And, as Defendants correctly point out, in Illinois, "eviction proceedings fully satisfy the due process rights of tenants in public housing." *Matthews v. Round Barn Manor Ass'n*, No. 85 C 10702, 1986 WL 8738, at *3 (N.D. Ill. Aug. 4, 1986) (citing *Johnson v. Ill. Dep't of Public Aid*, 467 F.2d 1269 (7th Cir. 1972)); *see also Skolnick v. Doria*, No. 93 C 7037, 1994 WL 445088, at *4 (N.D. Ill. Aug. 16, 1994) ("Illinois provides adequate predeprivation process for evictions."); *Turner v. Chi. Hous. Auth.*, 760 F. Supp. 1299, 1309–10 (N.D. Ill. 1991) (noting that a "state court forcible entry and detainer action . . . provides adequate due process"). Because Houston has already received adequate process, she fails to state a plausible claim for violation of her procedural due-process rights. The Northpoint Defendants' motion to dismiss is granted as to Count II.

## IV. Conspiracy to Interfere with Civil Rights (Count III)

The Northpoint Defendants and Kahn both seek dismissal of Count III, in which Houston alleges that the Northpoint Defendants and Kahn conspired to interfere with her civil rights in violation of 42 U.S.C. § 1985(3). She claims that Pena targeted black tenants for eviction and imposed different terms and conditions on their tenancy, and that Morein, Phetteplace, Pena, and Kahn fabricated an altercation between Houston and Pena as an excuse to terminate her lease. Am.

Compl. ¶¶ 69–71, 77, 81.  Additionally, she alleges that Kahn "intentionally and purposely supplied the court with falsified statements and fabricated documents" and withheld evidence during the eviction proceedings.  *Id.* ¶¶ 91, 102.

The Northpoint Defendants contend that Count III must be dismissed because Houston's allegations "fall woefully short" of what is required to state a § 1985(3) claim.  Northpoint Defs.' Mem. Supp. Mot. Dismiss at 15.  Similarly, Kahn argues that Houston's "conclusory allegations surrounding a grand conspiracy" are "speculative at best, and not entitled to the assumption of truth."[6]  Kahn's Mem. Supp. Mot. Dismiss at 8, ECF No. 90.  Houston's responses largely reiterate the allegations in her complaint.

Houston's complaint fails to state a § 1985(3) claim.  To prevail on such a claim, a plaintiff must allege "(1) the existence of a conspiracy, (2) a purpose of depriving a person or class of persons of equal protection of the laws, (3) an act in furtherance of a conspiracy, and (4) an injury to person or property or a deprivation of a right or privilege granted to U.S. citizens."  *Green v. Benden*, 281 F.3d 661, 665 (7th Cir. 2002). A § 1985(3) claim must be predicated on some "racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."  *Roach v. City of Evansville*, 111 F.3d 544, 547 (7th Cir. 1997).

Houston's § 1985(3) claim is deficient for two primary reasons.  First, her allegations are insufficient to support an inference that the Northpoint Defendants

---

[6]     Kahn also argues that Count III must be dismissed pursuant to the absolute attorney litigation privilege.  However, this argument was raised for the first time in Kahn's reply brief and is therefore waived.  *See Mendez*, 646 F.3d at 423–24.

and Kahn had entered into an express or implied agreement to violate her civil rights. "[A]llegations of a conspiracy, whether in the context of Section 1985(3), Section 1983, or a federal crime, 'must be supported by facts suggesting a meeting of the minds between two or more persons.'" *Laporta v. City of Chi.*, No. 95 C 2899, 1997 WL 162840, at *3 (N.D. Ill. March 26, 1997) (quoting *Trautvetter v. Quick*, 916 F.2d 1140, 1152 (7th Cir. 1990)).  Here, Houston has failed to provide any facts supporting her conclusion that the Northpoint Defendants and Kahn had entered into a conspiracy. Houston does aver that the Northpoint Defendants hired Kahn as their attorney and that Kahn has a background in landlord-tenant law.  But this is not enough to allege the existence of a conspiracy.

Second, Houston has not adequately alleged the necessary element of racial animus.  Houston's complaint contains only conclusory, unsupported statements to the effect that the Northpoint Defendants and Kahn "were motivated by invidious discrimination towards black residents and their preconceived prejudice[d] views concerning blacks are motivated by invidious discriminatory animus with malice indifference for the rights of black residents," that Kahn "has systematically deprived the rights and privileges of black residents facing evictions [in cases where] he was the Attorney," and that Kahn "did not believe black people had rights."  Am. Compl. ¶¶ 108–09.  But Houston fails to point to any facts in support of these assertions,[7] and mere conclusory allegations of racial animus, without more, are insufficient. *See*

---

[7]     Although Houston describes Pena's alleged mistreatment of black tenants, nothing in the complaint suggests that Pena's actions were part of a broader conspiracy involving the other Northpoint Defendants and Kahn.

11

*Henderson v. Marker*, 581 F. App'x 577, 580 (7th Cir. 2014) (affirming dismissal of § 1985(3) claim because, although the plaintiff accused the defendants of "acting because of his race," his complaint "c[a]me nowhere close to plausibly alleging discriminatory animus"); *Linda Constr. v. City of Chi.*, No. 15 C 8714, 2016 WL 4429893, at *4 (N.D. Ill. Aug. 22, 2016) (finding that conclusory statements that the defendants acted with racial animus failed to state a § 1985(3) claim, and noting that "the fact that [the] [p]laintiffs [were] black [did] not prove in and of itself that the alleged conduct against them was due to their race"). The Northpoint Defendants' and Kahn's motions to dismiss are granted as to Count III.

## V.    § 1986 Action for Neglect to Prevent (Count IV)

Elizabeth Nerney, Senior Asset Manager for IHDA, seeks to dismiss Count IV of Houston's complaint, in which Houston alleges a violation of 42 U.S.C. § 1986. Houston claims that Nerney failed to ensure that her eviction complied with HUD guidelines. The claim is based on email communications between Houston and Nerney beginning April 15, 2017, and concluding on June 26, 2017. Am. Compl. ¶¶ 118–23. In them, Houston asked Nerney to review the notice of termination of tenancy she had received and to ensure it complied with HUD guidelines. In response, Nerney stated, "[m]anagement is within their right to attempt to terminate your tenancy based upon a threat of violence to a staff member." *Id.* ¶ 123.

Nerney offers various arguments as to why Houston's § 1986 claim should be dismissed. She argues that the Court lacks jurisdiction pursuant to the *Rooker-Feldman* doctrine, that the claim is barred by the applicable statute of limitations,

and that it is barred by *res judicata* and collateral estoppel.  Houston, unsurprisingly, disagrees.  The Court need not address the substance of Nerney's motion, however, because it is clear that Houston's § 1986 claim cannot proceed where there is no valid § 1985 claim.

"[L]iability under § 1986 is derivative of § 1985(3) liability; without a violation of § 1985(3), there can be no violation of § 1986."  *Grimes v. Smith*, 776 F.2d 1359, 1363 n.4 (7th Cir. 1985); *see also Smith v. Gomez*, 550 F.3d 613, 617–18 (7th Cir. 2008) ("[B]ecause [Plaintiff] has failed to state a § 1985 claim, his § 1986 claim fails as well."); *Hicks v. Resolution Tr. Corp.*, 970 F.2d 378, 382 (7th Cir. 1992) ("[I]n the absence of a viable claim under § 1985(3), a § 1986 claim cannot exist.").  As discussed above, Houston's complaint fails to state a § 1985(3) claim against the Northpoint Defendants and Kahn.  Thus, there can be no valid § 1986 claim, and Nerney's motion to dismiss Count IV is granted.

## VI.    Houston's Motion for Sanctions

Houston has filed a motion for sanctions against counsel for the Northpoint Defendants pursuant to Federal Rule of Civil Procedure 11.  Rule 11 states, in pertinent part, that "[b]y presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . [that] the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(3).

In determining if sanctions for violating Rule 11 are warranted, "[t]he court must 'undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless.'" *Cuna Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006) (quoting *Nat'l Wrecking Co. v. Int'l Bhd. of Teamsters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993)). The decision to impose sanctions under Rule 11 is entrusted to the discretion of the district court, which is best situated to know whether an attorney conducted a proper inquiry into the facts underlying a case. *Cuna*, 443 F.3d at 560.

Houston seeks sanctions based on false statements in the Northpoint Defendants' opening brief in support of their motion to dismiss. The Northpoint Defendants, for their part, argue that Houston's motion is procedurally deficient because she did not comply with Rule 11's safe-harbor provision. In any event, they contend, sanctions are not warranted because the misstatements were inadvertent.

## A.    Procedural Compliance with Rule 11

In order for a court in this district to consider imposing sanctions under Rule 11, the moving party must comply with the Seventh Circuit's procedural requirements. First, a party seeking to file a Rule 11 motion must serve it on the non-moving party at least twenty-one days prior to filing it with the court. *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co. of Chi.*, 649 F.3d 539, 552 (7th Cir. 2011). "This practice creates a safe harbor that allows a party to avoid sanctions by amending or retracting a challenged filing." *Olson v. Reynolds*, 484 F. App'x 61, 64 (7th Cir. 2012). Although a number of circuits require strict compliance with Rule 11's instruction,

the Seventh Circuit permits service of a communication that warns of an impending motion for sanctions as a substitute for service of the motion itself. *N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 887 (7th Cir. 2017).

The Northpoint Defendants contend that Houston failed to comply with Seventh Circuit standards by "foregoing any communications and unilaterally moving for sanctions." Northpoint Defs.' Resp. Opp. Mot. Sanctions at 4, ECF No. 69. Houston's motion must be denied, they argue, because she "failed to serve [it] upon counsel or otherwise notify him of her intent to seek sanctions at any time before filing her Motion," thus running afoul of Rule 11's safe-harbor provision. *Id.* at 5. For her part, Houston appears to concede that she made no attempt to notify the Northpoint Defendants' counsel before filing her motion, instead merely asserting—without any citation to legal authority—that the safe-harbor provision "does not [ ] apply in this case." Pl.'s Reply Mot. Sanctions at 4, ECF No. 77.

Houston is mistaken. "Rule 11(c)(2) provides that a motion for sanctions *must* be served on the opposing party[.]" *Matrix IV*, 649 F.3d at 552 (emphasis added). Because Houston made no attempt to notify counsel for the Northpoint Defendants of her intent to seek sanctions prior to filing her motion, the Court concludes that her motion is procedurally deficient.

## B. Merits of Houston's Rule 11 Motion

Even if Houston's motion was procedurally sound, however, she would still need to succeed on the merits under Rule 11. Although Houston's motion makes repeated references to the Northpoint Defendants' counsel's involvement in

"fraudulent and deceitful" behavior, "lying," "'massaging' evidence," and "fraud," the thrust of her motion is that the Northpoint Defendants made incorrect statements in their opening brief in support of their motion to dismiss. Pl.'s Mot. Sanctions at 1–2, 5, ECF No. 50. As noted above, the Northpoint Defendants initially sought to dismiss Houston's complaint pursuant to the *Rooker-Feldman* doctrine. In their opening brief, they stated that Houston had not appealed the circuit court order that resulted in her eviction. Houston did, however, file an appeal, as the Northpoint Defendants acknowledge in their reply brief. In Houston's view, the statement that she had not pursued an appeal was not an oversight, but a "desperate attempt for Counsel to utilize the *Rooker-Feldman* [doctrine] . . . in hopes of scoring a win." *Id.* at 2.[8]

The Northpoint Defendants acknowledge the error, as they did in their reply brief in support of their motion to dismiss. They state that "counsel believed that Ms. Houston had forfeited her opportunity to appeal the Illinois state court's orders" and that counsel "would have promptly corrected the statement if Houston had brought the issue to their attention." Northpoint Defs.' Resp. Opp. Mot. Sanctions at 6. The Court notes that Houston's complaint did, in fact, indicate that she was pursuing an appeal, *see* Am. Compl. ¶ 34. That does not, however, prove Houston's position that the misstatements were intentional misrepresentations. The

---

[8]     Houston's reply raises several additional points. After responding to the Northpoint Defendants' arguments, she goes on to suggest that Nerney's counsel *also* made untrue statements in a pleading. She then responds to points made in Nerney's reply in support of her motion to dismiss. Houston may not use her reply in support of her motion for sanctions as a sur-reply in opposition to Nerney's motion to dismiss, so the Court declines to address the additional arguments raised therein.

statements that Houston was not pursuing an appeal appear to be mere oversights, and the Northpoint Defendants corrected their mistake in their reply brief. And, in any event, the misrepresentations were immaterial, because the Court has declined to apply the *Rooker-Feldman* doctrine. Thus, even setting aside the procedural deficiency of Houston's motion, the Court declines to impose sanctions based on an inadvertent, immaterial pleading error. The motion for sanctions is denied.

## Conclusion

For the reasons stated herein, the Northpoint Defendants' motion to dismiss Counts I through III [40] is granted as to Counts II and III and denied as to Count I; Kahn's motion to dismiss Count III [90] is granted, and Nerney's motion to dismiss Count IV [47] is granted. Remaining is Count I against AIMCO, Northpoint, Morein, Phetteplace, and Pena. Houston's motion for sanctions [50] is denied.

In the event that Houston wishes to file an amended complaint, she should file a motion seeking leave to file an amended complaint, attaching a proposed amended complaint, within 21 days.

**IT IS SO ORDERED.**             **ENTERED 3/7/19**

_____

**John Z. Lee**
**United States District Judge**

17